242209 Molecular Dynamics v. Spectrum Dynamics Okay, when you're ready. May it please the Court, Charlotte Bajent of Holwell-Schuster and Goldberg for Petitioners Appellants. With the Court's permission, I'd like to reserve two minutes for rebuttal. Okay, thanks. We are here today because the parties entered into a contract. Speak right up as if you're yelling. They designed this to make it hard to hear. Thank you, Your Honor. We're here today because the parties entered a contract. That contract required them to resolve their disputes by arbitration and to bring any court actions concerning that arbitration exclusively in New York. The District Court nullified that bargain, and it had no reason to do so. Today, I plan to discuss three reasons why this Court should reverse and remand for further proceedings. First, the District Court had subject matter jurisdiction under Section 203 of the FAA. Section 203 of the FAA provides federal subject matter jurisdiction over actions falling under the New York Convention. And Section 202 of the FAA defines an action falling under the Convention. And it makes clear that this action falls under the Convention because it concerns an arbitral award arising from a contractual commercial relationship between foreign parties. So your counterpart will say, let's not get overly technical. Whether or not it's jurisdiction to act versus authority to act under the governing law is sort of academic. Even if the court has jurisdiction, the way the law is structured, it doesn't have authority. What's your response to that? My response to that is that it is an important distinction. Whether the court had subject matter jurisdiction under the FAA, which is conferred by Congress, is a separate question from whether the court had authority to exercise that jurisdiction over this proceeding. And that distinction matters because the parties cannot, and they did not, confer subject matter jurisdiction on the District Court. But they can agree to submit their disputes exclusively to the District Court in a forum selection clause, as they've done here. And you think the forum selection clause specifically authorizes vacature pursuant to the law of the state in which the vacature is sought? Yes, Your Honor. So how many signatory states are there to the Convention? 103 or so? Many, yes. So there are 103 jurisdictional jurisdictions under that, if contracts set in any jurisdiction that's a signatory to the Convention, those 103 would be, all their laws would be in play with regard to vacature? That's an interesting question. Yeah, it is interesting because that's, I think, a modest interpretation of what you're saying. Let me flip, let me ask you a hypothetical. Let's flip it. Let's presume that they saw enforcement of the arbitral award in New York in federal court. Is it your position that the language of that contract would authorize you to counter and defend and seeking vacature? Yes, and I'd like to make two points. Having done that runs squarely, doesn't that run squarely into the language of the Convention, which says recognition of enforcement of award may be refused at the request of a party against whom it is invoked? You're the one that's being invoked in my hypothetical. Only if that party furnishes to the competent authority where the recognition of enforcement is sought, New York, proof that E, the award has not yet become binding on the parties or has been set aside or suspended by a competent authority of the country in which or under the laws of which the award was made. So that sounds to me like in the Convention a specific prohibition of using any jurisdiction where you seek recognition. You can also seek vacature. You can only seek vacature in the primary jurisdiction. I'd like to make two points in response to that question. The first is there's no dispute that Article V of the Convention lists the exclusive grounds upon which a court may refuse enforcement of an award. We agree with that. And had the appellees brought... Well, so let's use my hypothetical. The appellate brings you an answer for it and you say no, no, because it's going to be... It should be vacated. The award should be vacated. And what... Under... Pursuant to what law would you then say? You would say Swiss law, wouldn't you? To follow your hypothetical, if the appellees had brought an action to enforce in New York, we would cross-petition to vacate under the Form Selection Clause. And if the district court agreed with us and vacated the award, that would trigger a different exception under the Convention. So then the Convention means nothing. So that would make a folly of the Convention. The Convention was... The Convention's been around for 55 years and no court has ever ruled your way in New York. Let me finish. Let me finish. Okay. The basis of the Convention was to allow and encourage international arbitration of disputes and the portability, if you will, of the resolution of those disputes. And it's set up in a number of our decisions. Judge Cabranes has written about this. I think Judge Sack has written about this. I don't think I've written about it. I've been around 22 years, but that's not long enough, I guess. In any event, sooner or later, it might be this one. You never know. But the purpose of the statute is that somebody gets an award. Then they can go someplace else. Then the question is recognition, then enforcement. And so I submit to you, I don't see the thread you're looking for because it produces, frankly, an absurd result. If I may respond briefly on the Convention. The Convention contains exclusive grounds to refuse recognition and enforcement, and one of those is under Article 5.2.B, which says that recognition and enforcement of an award would be contrary to the public policy of that country, and that provides grounds to refuse enforcement. Recognition and enforcement, but not vacature. And why? Because vacature would be a judicial determination that the award no longer exists. And what then might happen? It would produce what? A judgment. And what would that judgment do with regard, could that judgment then be enforced in Canada? Could it be enforced in Mexico? Because there are international agreements with regard to judgments of member signatories. Counsel, I'd love to hear the second half of your answer to that question. I take this point, and I think it's an important one, but you were about to say something, and I want to. Thank you, Your Honor, and I will address the points you've raised. Excuse me. The convention provides exclusive grounds to refuse recognition and enforcement, and if an award were vacated based on the form selection clause, as the convention envisions happening in only one jurisdiction, and here the contract confers authority only on one single jurisdiction, if it were vacated, then the only court that would be called upon to refuse or grant enforcement of that award would be a New York court, and a New York court could refuse enforcement under a different convention provision, Article 5.2b, because enforcing an award that that court has vacated on grounds that it was procured by fraud and perjured testimony, as we've alleged below, would be contrary to this forum's public policy. And at the heart of the convention is respect for party autonomy. Parties opt into the convention through their arbitration agreements. Here the parties had a forum selection clause. There's no dispute that had they written in that forum selection clause that the Swiss arbitral panel would apply the American Arbitration Association's rules that the district court would have jurisdiction to vacate the award. That's something that the parties agree on here. And here what they did is something only slightly different. They said that all post-award proceedings would happen in New York under domestic arbitral law. Well, they didn't say all post-award. They said all judicial proceedings. I presume that proceeding to compel arbitration would have been, on your theory, limited to New York courts. You couldn't have brought a motion to compel arbitration in Switzerland. Am I misunderstanding the scope of that provision as you argue it? Correct, Your Honor. Section 9 of the license agreement grants New York's non-exclusive jurisdiction over injunctive relief, so there's ongoing supervisory authority that could be exercised by different courts, and then exclusive jurisdiction over matters concerning the award. So matters concerning the award wouldn't encompass the injunctive relief. It would literally be both enforcement and vacature? Yes, exactly, Your Honor. Okay, so in your view, I mean, that's interesting. The focus has been on the authority to vacate, but in your view, the way I know it's distinct from, oh, what's the summary order that everybody's talking about here? It's distinct from that case insofar as they're the ZV, but it's similar in the sense that it says that the only jurisdiction in which this can be enforced is ex-jurisdiction, and in that respect, at least it looks like ZV. It's just it's got this other piece in there. Exactly. ZV is very similar in that this court affirms the parties could contract out of the default forum for recognition and enforcement, and as Your Honor raised today, that really is the core purpose of the convention, and this court affirmed that parties could contract out of the default rule that enforcement can be sought in any contracting state, and here we submit that the same is true with vacature. Parties can agree to submit vacature exclusively to a single forum that they choose. It's true that I haven't encountered any cases that support your view. I actually haven't also encountered any cases that squarely address the issue that contradict your view, but can you tell me what you think the best case is for you? You're absolutely right, Your Honor, that no case is expressly held that parties can contract out of the default forum for vacature, but I'm also, as you've noted, not aware of any case in the U.S. or in Switzerland or in any other contracting state prohibiting parties from having a forum selection clause like the one here, and I think the best cases that support our position are ZV, as we've discussed. That's a summary order, right? Summary order, correct. That's why we cite it so often. Yeah. This is undeniably a unique situation, but it arose similarly in ZV. It was slightly different, but similarly, and there's also a decision that we cite in our brief from the Paris Court of Appeals that I think is very persuasive on this point, and there the Paris Court of Appeals held that in an appropriate case, and that wasn't one, but in an appropriate case, there is nothing prohibiting a French court from exercising jurisdiction to vacate a Swiss award in accordance with a jurisdiction clause that selects a French court. So let me ask you, and that kind of raises a related question for me. There's this whole section of the briefing about what the Swiss arbitral laws are, and I'm trying to think through the choice of law issues that your view potentially raises. If you bifurcate the form of arbitration and the arbitral rules pursuant to which an arbitration is conducted from the judicial enforcement, I take it your position is that we should understand Section 9 as not only providing that the courts of New York have exclusive jurisdiction, but that enforcement and vacater are governed by the laws of New York. Yes, that's exactly. And where does it say that? I mean, it tells, you know, is that implicit, or where do we get that from, that language? That is implied by choosing this forum, that this forum would apply our domestic arbitral law, and the support for that comes from a number of cases from this court, like Scandinavian Reinsurance, Yousef Ahmed, and Zeiler, a case that was cited by the district court. And in all of those cases, those were U.S. awards, candidly, but in all of those cases, the court assumed that by choosing New York as the seat, that the vacater proceedings would be determined under Section 10 of the FAA. But they chose New York as the seat of the arbitration as well, right? And so that's where I think the choice of law issues come up, is when you bifurcate the two. And I'm just trying to figure out why it's self-evident that we're, oh, sorry. No, no, go ahead. That's the problem, isn't it? I mean, the real problem here is separating which end this is on. Is this on the formation of the award and its legitimacy at its formation, or its enforcement down the road? And the problem you have that we've had the conversation about is that the enforcement side of it could be viewed as, you say contractually they didn't do it that way, could be viewed as that the issue of the arbitral award's legitimacy has already been resolved at the time of its award, at the time of its making and or an appropriate time shortly thereafter or thereafter, going back to the place of its formation and saying, look, this is in violation of your law, and therefore the award itself is illegitimate and should be vacated. It does seem odd because you're imposing a U.S. standard in determining the legitimacy of a Swiss award. You're absolutely right, and parties are free to do so expressly under the convention. When parties agree to conduct. So my point is that perhaps maybe there's a limiting principle. It ought to be expressed, clearly played out, in terms of the fact that the power to vacate an award shall be solely governed by U.S. law. Your Honor, to the extent that the court is with me on the fact that the district court has suffered. I ask you, would that violate the convention? If the licensing agreement said other than on matters of injunctive release, blah, blah, blah, we don't have to worry about that, and are competent courts for the purpose and on matters concerning the chosen arbitration. That's the language you're relying on, right? Yes, correct. It's a little vague. Matters concerning the arbitration. I can think of all kinds of matters concerning the arbitration, like what law did they use? Did they allow a witness to testify? Stuff like this. There's claims of conflict of interest with regard to the arbitrators, things like that. What if it is specifically said, and with regard to matters of vacature of the award, U.S. law solely shall apply? That would be a clearer provision, but I will also make just two quick points with respect to choice of law. The first is that Section 208 of the FAA provides a very simple answer here. When an action is brought under the convention, that is under Chapter 2 of the FAA. Section 208 provides that the standards, the domestic procedures in Chapter 1, apply to the extent that there is no conflict. And here there is no conflict because the convention does not provide standards for vacature. Well, the convention does apply, say, that with regard to enforcement, that one defense against enforcement is that the award can be vacated pursuant to the law of the arbitral form. Yes, Your Honor, and it is entirely. That sounds fairly specific to me. That provision is not at play here because there is no enforcement proceeding, and if there were. Because you move first and you moved ahead of them. Had it been the other way, it would clearly be in play, would it not? In that sense. And then you would be using, you would say that the contract language you are imposing is more specific or more directive than the language of the convention. No, Your Honor. We are not seeking to use the contract to deviate from the convention in any way. Okay. Our position is that you can enforce the party's agreement without running afoul of any term in the convention. And the second point I'd like to make briefly on this is that the standards that the court applies, if this court determines that the district court had subject matter jurisdiction, the standards that the court applies below is something that can be determined on remand. And ultimately, the choice of law here, while we submit that it should be the FAA, even if it were Swiss law, they provide the same standards. Oh, so wait a minute. You think it should be the FAA, not New York law? Yes, yes. Thank you. That it should be the FAA, given that the district court is exercising its jurisdiction, it should apply the domestic procedural rules under the FAA. Yeah. Using 208 of the FAA to connect Chapter 1 to Chapter 2. Okay. I think we're going to get to hear from you again unless there's further questions. No, thank you. We'll go ahead and hear a response. Now I understand you all are divvying your time, is that right? That's right, Your Honor. With the court's permission, five minutes each. That's fine. And just because I don't want to get into a situation where you're both running over and not knowing how. So I'm going to hold you to the five minutes unless you decide that you want to start chipping into. We understand, we understand. Thank you. All right, thank you. May it please the court, David Sinati from Passion Stein and Walter Hayden on behalf of Applebee Spectrum. Speak right up. Your Honor, it has been long established in this court and universally that the jurisdictions identified in Article 5.1e of the New York Convention have exclusive jurisdiction to annul an arbitral award. The parties here agree that the awards were made in Switzerland under Swiss arbitration. I'm sorry. I'm slow to catch up. It's been long established. Can you tell me what case says that? Because I did not find a case that said that. Yes, Your Honor. One example is Youssef Ahmed v. Toys R Us from 1997 in this court. And that decision, among others, says that the New York Convention Article 5.1e mandates very different separate regimes depending on whether you are before a primary or a secondary jurisdiction. Fair enough. No, I think I am understanding your point now. So your point is that at least in cases in which the parties haven't purported by contract to do something else, it's been long established that that's the rule. And now the issue here is whether the parties can vary from that rule by contract. So can you tell me what cases you're relying on, or maybe there isn't one, to say, oh, yes, we have already said they can't vary from that by contract. This particular issue with the form selection clause purporting, well, the petitioner's view purporting to agree to a secondary jurisdiction of annulling an award hasn't come up specifically before this court. Okay. All right. The closest case we have is the international trading case, and that is from the District of D.C. There the question was consent, but it was implied consent. So the petitioner – the party argued there that the opposing party gave implied consent to the Qatari courts annulling a French award. Didn't the court there in the end think the parties hadn't actually purported to contract for Qatari jurisdiction, and so they didn't sort of have to fully engage with the issue? Or am I misreading that case? Well, again, Your Honor, it wasn't a contractual issue. It was an implied consent. But it was a consent issue nonetheless, which is the essence of the argument. Implied consent after the fact, not in the context of their arbitration agreement. That is correct. But the point that the district court made fits here very closely, which is that it doesn't matter whether there was implied consent or not, because the text of the convention tells us who can annul an award. And in that case, it was only the French courts. In this case, it's only the Swiss Federal Tribunal by virtue of Article 191 of the Swiss Private International Law Act. It's interesting you raise that case, because the D.C. District Court used terminology that invoked the concept of jurisdiction. And we've got this, I don't think you're pushing the jurisdiction approach in your brief so hard because of the language of the FAA and creating the jurisdiction. And so you've characterized it as authority to act. And so once you make that transition from talking about the court's subject matter jurisdiction to talking about its authority under the convention, how do you sort of deal with the kind of high-level notion that the point of arbitration is to give effect and create a forum for the parties to adjudicate their disputes pursuant to the terms of their own agreement? Your Honor, I deal with that issue in the same way the United States Supreme Court dealt with it in the Hall Street v. Mattel case, which is to say that party autonomy is a major issue in arbitration generally. That was a domestic case. But only to a point. The parties have ability to agree and craft their arbitration process up to the point of the statute. In this case, it's the treaty, but it's incorporated into U.S. law. So they can contract up into the point of the New York Convention. But the New York Convention in Article 5.1e distributes the authority internationally. By the way, Your Honor, there are 173 state parties. Out of 197 states. So it's a major treaty. Distributes internationally what you could call jurisdiction, the district court did, or legal authority, and divvies it up between secondary and primary jurisdictions. And it is clear, it is clear in the text that only the primary jurisdictions can annul. So can I just, because I think you've made that argument well in your brief, so I want to just ask the follow-up question. In Hall, we have a very clear statute that says these are the bases on which you can vacate an arbitration award. And the parties aren't free to, by contract, create other grounds in the context of arbitration. And so by analogy, you're saying that that's true here. The difference, and I want you to tell me why this isn't right, is that here, we don't have, we have an inference in Section Article 5.e that the competent authority of the country in which or under the law of which the award was made is the one that can set aside or suspend it. It's less obvious to me why that's not something that the parties can contract around. Do you agree that the parties can, I realize Skivy's not presidential, but do you agree that the parties could limit the fora in which an arbitral order can be enforced? Yes, Your Honor, in the sense that they can waive the right by contract to take their award and go to the other jurisdictions. But as the district court pointed out here, that is a very different thing than agreeing to convey jurisdiction or legal authority to a null. Right, and again, I think you've conceded rightly that we're not talking about conveying jurisdiction, which everybody agrees you can convey. But you're also saying you can't convey legal authority because the limitations on who can vacate under the convention have the same sort of clarity and enforceability as an exclusive list as the bases in Hall for domestically decline to enforce an arbitration award. Is that fair? Well, Your Honor, can I clarify our position on subject matter jurisdiction? Because you mentioned a concession, and I realize I'm over time, but. No, I don't want to misunderstand your argument. Yeah, I want to be clear on this. So we're talking about two different types of jurisdiction. The first question is federal statutory jurisdiction, in this case federal question jurisdiction, which under this Court's Scandinavian reinsurance decision, which I believe Your Honor authored, there is federal statutory jurisdiction to hear a petition to annul an award that is covered by the convention. So certainly this award is covered by the convention. So that would convey federal subject matter jurisdiction, but that is a limited proposition. It is the distribution of authority in the United States between federal and state courts. So the petition could be filed in federal court. It didn't have to be filed in state court. That's as far as it gets you. But the jurisdictional issue that the district court was dealing with is the jurisdiction established. To make it clear, we use the words legal authority, which is also the words used in the restatement. The jurisdictional issue there is an international concept. International jurisdiction is distributed in Article 5.1e between primary and secondary jurisdictions. Right. I guess maybe I'm pushing back and you're equating authority with jurisdiction. Jurisdiction has a very clear meaning. It's a term of art, and it has to do with whether a particular court is authorized by our laws to adjudicate a particular dispute. And you're not, what I'm describing as your concession is your recognition that under 9 U.S.C. 203, an action or proceeding falling under the convention, which I think this is, shall be deemed to arise under the laws and treaties of the United States, thereby meeting the courts of jurisdiction. I understand what you're saying is that that doesn't mean that they can do anything they want because we have a statute that constrains their authority. And I just, I, so I don't, I don't think I've mischaracterized your position on jurisdiction, understanding jurisdiction in a technical sense. Yes, Your Honor. That's correct, thank you. Okay. She didn't dismiss the petition. She denied the petition. That's right, Your Honor. Right. She denied it. She denied it. If this really was not no subject matter jurisdiction, she would have dismissed the petition. I agree with Your Honor. All right. Yeah, the problem is the federal courts get shaky on subject matter jurisdiction because their jurisdiction depends upon what Congress tells them they can do. And so they often lapse over. But I was just looking at the entries. She, so she, it's really a question whether she had the tool in her toolkit to resolve this dispute with the remedy that they were asking for. She said, I don't have that tool. I agree with that as well.  All right. Thank you. Thank you. Thank you.  May it please the Court. Frederick Whitmer, Kilpatrick, Townsend, and Stockton, LLP for biosensors. I'd like to address one of the colloquies that Judge Wesley had before. I do believe that the arguments that the appellant makes here are definitely in violation of the convention. And, for example, if they had the clear language that she talked about that said that a New York State court could hear annulment or apply New York law, that would be in direct violation of what the convention says, which limits it to the law of the arbitral seat and or the law under which the arbitration was granted. And why is that true? It seems to me, and Judge Wesley, you've used that this would be either foolish or difficult to deal with. The reason would be is because this Court has held, as a number of courts have held, that the convention identifies seven exclusive defenses to enforcement. You can't contract around those seven defenses because, from a practical matter, if a New York court being neither the seat of the arbitration nor the law under which the arbitration was decided, annuls, that would not constitute a defense for the enforcement of the arbitral award anywhere else because the defenses under the convention are exclusive. And saying that a New York court has annulled, even the parties may have agreed to that, but that is in contravention of what the 173 nations agreed to in the quote-unquote contract that is the treaty. I don't want to take on your opponent's burden, but your opponent's going to say, I suspect she would say, that, well, wait a second, we've only agreed to allow it to be enforced in New York and in federal court, I might add. But in any event, and so, therefore, that isn't in play in this agreement because they've limited and they've kind of short-circuited that policy concern that's built into the convention. But the difference is, if I may, Your Honor, is that it seems to me that the deal that was made in the treaty was to say, if you're a sovereignty where the arbitration is held and you're a sovereignty whose law is or you're a sovereignty whose law is being implied, having the competent authority to set aside or annul that decision is consistent with granting the sovereignty its own authority to deal with its own laws and decisions. A private contract that says, well, who cares what the convention says? We want to limit where it can be done to another jurisdiction. Can I, one of the things I'm struggling with, we're talking about the laws of the various jurisdictions as it relates to arbitration, and I'm not as familiar with the structure internationally, but I look at the United States and we have the AAA and we have the, like, there's a whole bunch of different organizations and they each have their own sets of rules. There's no sense in which one of them represents U.S. law. It's just a set of rules that people have agreed to within that arbitration association. So why is it, why is there tension between agreeing that that's the set of rules and the set of arbitrators we're going to use, but in deciding vacater we're going to apply the laws of the U.S.? Because if a United States court, be it New York, or a court other than the court of the seat under whose laws the arbitration was signed, if a court other than that vacates or purports to vacate, it is transgressing the notions of international comity, which are, I think, embraced. Where's the international comity? I've said I want to arbitrate under the rules of the AAA, but I want Canadian arbitration judicial law to apply to enforcement or vacater. How does that offend the U.S.? Because the choice that was made in the convention is that the sovereignty under whose law or where the arbitration was held is the only one to vacate it because it is the one that has the knowledge, presumably, it is the one that has the most intimate knowledge of how its laws should be applied. Right. And that's where I'm trying to figure when you say we're not really applying its laws, right? We're looking at whether they complied with the rules of the American Arbitration Association. That's not a law of any state or country. I understand. But the sovereignty, it seems to me that the textual analysis, because I'm looking at the text of the convention, it presumes, the text of the convention says only seven ways you can annul. Seven ways you can defend enforcement. And one of them is to saying that it has been annulled or suspended, and it has been annulled and suspended by the same sovereignty under which the order was given. That makes perfect sense that you are saying that the primary jurisdiction is primary because it has primary knowledge of its laws and authorities, and that anybody else say, oh, no, you blew it, is to step on sovereignty of the primary jurisdiction. So if we agreed that the seat of arbitration was Montreal, but it was going to be conducted pursuant to the rules of the American Arbitration Association, would that be an order that was issued under the laws of the United States or? I wish I were in your position to say we don't give advisory opinions, but it seems to me that that would be a circumstance where you would have a distinction between the seat and whose law is being applied.  So that's the point of the hypothetical, but the question being. I don't think any cases, excuse me for interrupting, Your Honor, but I don't think there's been any case that has decided that question. And really what I'm getting at with the hypothetical, I think the restatement sort of touches on this a little bit, but what I'm getting at with the hypothetical is I'm trying to figure out whether saying something is under the laws of the American Arbitration Association is the same as saying it's under the laws of the United States. No, I don't think it is because the rules are procedural in this regard, but I would say also very definitely here the appellants on more than one occasion, on several occasions conceded that it was always, the seat was in Geneva and that Swiss law applied, and that's either a number of... It would seem odd, it seems odd to me at least, I may steer your rebuttal, that you would create an award consistent with Swiss law and Swiss procedure. The arbitral forum governs the constructing, the determination, and the functioning of the process. There may be ancillary processes of independent agencies about how an arbitrator is selected, et cetera, et cetera, that are often decided by independent arbitration associations, et cetera, but the core of what's required of how the arbitration is conducted and its legitimacy are the law of the arbitral forum, or the parties can actually contract for another nation's law, not very often done and kind of odd, but in any event, and it would seem odd to then say, okay, now nobody's ever gone to a Swiss court and said, this is no good, now they come to the United States and they say, no, and we're being told that it was the intention of the parties to litigate under Swiss law and arbitrate under Swiss law and then measure whether it's enforceable by U.S. law. I mean, that's the nature of this dispute, right? That's their argument. Yeah, I understand. And I would also point out, I don't think we have heard before an argument that they intend to use E, the final version, as a way to get to B as a basis against the public policy of New York. I don't think that argument was made before, and I frankly don't think it works, because of all the arguments that we've made before. Okay. We appreciate your arguments, and we're going to hear from Attorney Bajan. I'd like to make three brief points in rebuttal. The first is that the appellees argued today that the convention sets out two different regimes, one that's the primary jurisdiction that can vacate the award and one that's the secondary jurisdiction that can recognize and enforce it. But the convention, in fact, is silent on that. That rule developed at common law. It is a default presumption in the convention. Why would you just select U.S. law? Because you could have conducted the arbitration in accordance with U.S. law when you said that it would be conducted in Switzerland, and you could have said conducted in Switzerland in accordance with the Federal Arbitration Act. Would you be clear if you'd done that? Because that's, in essence, what you want to do, right? The contract here did, admittedly, something a little unique. It gave the arbitration provision was that it would be in Switzerland under the Swiss procedures, but that thereafter it would be in New York under domestic law in the U.S. Are you saying that if there had been a Swiss court vacating this award that the contract would preclude that? Absolutely. That's really an interesting position. And it's a real challenge that we have faced here, that there is a forum selection clause that says we can only come to this forum. And now, despite everything that was said today, the appellees said remarkably little about the fact that they agreed to be here. So sophisticated parties, involving millions of dollars, chose to use one law to construct the award and decide its legitimacy. Or, excuse me, construct the award, but its legitimacy is measured by a completely different jurisdiction. Yes, and I'd like to unpack that a little bit. Because had this been an ordinary case, there was an arbitration in Switzerland under the Swiss arbitration center's procedural rules. A Swiss court would not apply the Swiss arbitration center's procedural rules to vacate the award. It would apply the Swiss Private International Law Act. Here, the parties decided at that stage, once the award is made, then they were going to supplant the primary jurisdiction of Switzerland with that of New York. And in doing so, the lex arbitri, or the arbitral law of this country, supplants that of Switzerland. We had an expert report in the record that supports that position. So, but I think one of the things we're struggling with is, is there a tension between saying you're going to use this set of arbitration rules and then you're going to review it pursuant to these laws. Does the Swiss arbitration center, is it sort of analogous to the American Arbitration Association? It's a non-governmental entity. Yes, Your Honor. But it develops its arbitration procedures, I presume, pursuant to the broader rubric that's established under the Swiss arbitration law. Is that assumption fair, or? The Swiss arbitration center's procedures, much like the American Arbitration Association's procedures, deal with things like what sorts of evidence can be introduced, how the proceeding is going to be conducted, how the arbitration will be held. The Swiss Private International Law Act, much like the Federal Arbitration Act in the United States, provides grounds to vacate an award that are very similar, things like partiality, fraud. Did you make this argument in your brief? Yes. This was the subject of extensive briefing below. No, here. In this Court, really, the issue is subject matter jurisdiction. The question of what standards should apply, we argued in our brief, should be remanded to the district court. That question really was never reached. And I take, Judge Wesley, your point earlier today that the district court dismissed or denied the petition rather than dismissing. But that order specifically says that the petition was denied for lack of subject matter jurisdiction. The question of what the parties actually intended in their form selection clause has never been decided. That form selection clause was not actually construed. But one thing I've gotten from your answer that I was trying to sort of understand is whether there's a necessary connection between the arbitral rules of a nongovernmental body and the overarching arbitration law of the country. And at least as to the U.S. and Switzerland, I gather from your answer, that it's not incongruous to mix and match those. Those exist sort of as they regulate distinct aspects of arbitration. So is that true for all 173 countries? I mean, I'm just trying to figure out whether there might be some countries in which the rules that govern how arbitrations are conducted are part and parcel of the same legal apparatus that describes the rules under which they're reviewed. Your Honor, I would submit that generally speaking, there are procedural rules that parties designate in their arbitration agreements like the American Arbitration Associations, like the Swiss Center for Arbitration, and similarly in Canada, there's a Canadian Arbitration Association that puts out rules. We also have JAMS in the United States. Those are different types of procedures that govern arbitrations. The procedural law that a court applies is a statute in each country in the various contracting states. And so that's true, is that there are countries that mix, blend those two into one package? Not to my knowledge, Your Honor. I'll just make one final point during this rebuttal, which is that the convention really is silent on this question. We are not asking the court to determine that the parties could contract out of any mandatory rule in the convention. The convention implies that there will be set-aside proceedings in the country in which or under the law of which the award was made, but the convention does not state expressly anywhere that parties are not allowed to contract out of that default forum. And I'd like to just briefly point the court to GE Energy, which is another New York convention case, and there the U.S. Supreme Court held that even though Article 2 of the convention only permits parties to compel arbitration to enforce an arbitration agreement, it says nothing on whether non-parties can do so. And therefore, because the convention was silent on that issue, the non-party in that case, GE Energy, was able to compel arbitration under domestic law, under domestic principles of equitable estoppel. And here we are asking for the same thing. The convention is silent on the form selection clause. But was that in a case in which federal law was designated as the law to apply to the arbitral reform? In that particular case, that was a U.S. award, and that's why they were here. So it was a U.S. award. Sorry, it was an arbitration agreement, and they were seeking to compel arbitration based on that agreement. So it was an interpretation of the law of the arbitral form. That's correct, Your Honor. That's correct. All right. This is not, is it? This is a situation where we're applying the domestic law to determine. This is a question as to whether the law of the arbitral form determines this or whether pursuant to the convention you can designate someone else's law with regard to the vacature of an award. I guess you concede that it's consistent with the law of the arbitral form? It is consistent with the law of the arbitral form, Switzerland, to contract out. Think about this. What I'm asking you to concede right now. Do you concede that this award is consistent with the law of the arbitral form? I apologize. I misunderstood your question before. No. No. If we could. I didn't think you did. No. Thank you for clarifying, Your Honor. The point that I would like to make is that the Swiss PILA and the Federal Arbitration Act both provide standards to vacate an award. Under either standards, we would be able to vacate. This is not an argument that was in front of Judge Phil. That argument was, and we had an expert who submitted an expert report on that. No, it's not an argument you made to us. Before this Court, we've asked for remand on that issue.  All right. I think we've got it. Thank you very much.  Very helpful argument on both sides. Appreciate it. We will take it under advisement.